IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY ABHSIE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 13 C 8886 |
| v. ) | |
| ) | Magistrate Judge Sidney I. Schenkier |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER[1]

Timothy Abhsie has filed a motion to reverse and remand the Commissioner's decision denying his claim for disability benefits (doc. # 12), and the Commissioner has filed a motion asking the Court to affirm (doc. # 21). For the reasons that follow, we grant Mr. Abhsie's motion to remand and deny the Commissioner's motion to affirm.

**I.**

In the August 10, 2012 opinion denying benefits, the ALJ applied the required five-step inquiry described in 20 C.F.R. § 404.1520(a) (R. 23-25). At Step 1, the ALJ found that Mr. Abhsie had not engaged in substantial gainful activity since the alleged onset date of February 17, 2011 (R. 25). At Step 2, the ALJ found that Mr. Abhsie had the following severe impairments -- degenerative disc disease of the lumbar spine, osteoarthritis of the hips, and mild degenerative joint disease of the right elbow -- but that Mr. Abhsie's anemia was not severe (R. 25).

At Step 3, the ALJ concluded that Mr. Abhsie's impairments, alone or in combination, did not meet or equal a Listing (R. 27). The requirements of Listing 1.02 were not met because

---

[1]On January 24, 2014, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to the Court for all proceedings, including entry of final judgment (doc. ## 6, 8).

Mr. Abhsie could "perform manipulative activities with each upper extremity effectively" and "ambulate effectively." (*Id.*). In addition, the ALJ concluded that the medical record did not document the abnormal findings required by Listing 1.04. (*Id.*).

The ALJ then determined that Mr. Abhsie had the residual functional capacity ("RFC") to perform light work "involving no climbing ladders, ropes, or scaffolds, occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs, no concentrated exposure to heights or hazards such as dangerous moving machinery, and a sit/stand option that allows him to change positions for 5 minutes at a time after 45 minutes" (R. 27). In determining Mr. Abhsie's RFC, the ALJ considered medical records and opinions from Mr. Abhsie's primary care physician, Dr. Chandrarekha Kaza, and his pain management specialist, Dr. Ebby Jido, as well as opinions from two non-examining Department of Disability Services ("DDS") physicians, and testimony from his July 2012 hearing before the ALJ. The ALJ primarily addressed medical records from 2009 through 2011. However, the ALJ noted that in 2012, Mr. Abshie underwent diskograms[2] of two discs that were positive for pain and received several prescriptions for pain, including MS Contin and Zofran (R. 25-26).

Mr. Abhsie saw Dr. Kaza regularly, approximately three or four times a year, dating back to at least 2004, although his visits increased to more than once a month by the time of the alleged onset date in February 2011 (R. 287-406). Medical records show that Mr. Abhsie has complained of joint and back pain regularly since 2004 (*Id.*). MRIs and X-rays from 2009 and 2011 revealed that Mr. Abhsie suffered from mild to moderate degenerative disc disease in his back (R. 456, 463, 466-67), as well as osteoarthritic degenerative changes in his right elbow and

---

[2] A discogram (or diskogram) is used to evaluate back pain and determine if an abnormal disc causes the pain by injecting dye into the center of a disc. *Discogram: Definition*, Mayo Clinic http://www.mayoclinic.org/tests-procedures/discogram/basics/definition/prc-20013848. (last visited Mar. 9, 2015).

2

hips (R. 458-59, 461, 464-65). In May 2011, Mr. Abshie reported that he could not sit, stand, or walk "without debilitating pain" (R. 229), and in June 2011, Mr. Abhsie wrote in a disability report that his pain was increasing and he had difficulty standing long enough to shower (R. 240, 242).

In May 2011, a non-examining DDS state agency examiner, Dr. Charles Wabner, reviewed Mr. Abhsie's medical records and opined that his statements about the "intensity, persistence, and functionally limiting effects" of his symptoms were substantiated by the objective medical evidence," but that Mr. Abhsie could frequently lift ten pounds and occasionally lift twenty pounds; sit, stand and walk for six hours during an eight-hour workday; and occasionally stoop, kneel, crouch, climb, and crawl (R. 90-91).

As Mr. Abhsie's pain increased, he sought treatment from Dr. Jido, a pain management specialist, beginning in June 2011. Mr. Abhsie received multiple steroid injections in his back in June and August 2011 (R. 521, 532, 555), but Dr Jido reported that Mr. Abshie "did not respond" to the injections (R. 509). Dr. Jido also conducted radiofrequency ablation in July 2011 (R. 544),[3] but this procedure also was ineffective in relieving Mr. Abhsie's pain (R. 509, 532). Dr. Jido prescribed Mr. Abhsie pain medication, including MS Contin and Norco (R. 509), but Mr. Abhsie continued to complain of significant pain when lifting (R. 494).

In October 2011, a non-examining DDS physician, Dr. Young-Ja Kim, reconsidered Dr. Wabner's RFC opinion in light of more recent medical evidence (R. 96). Dr. Kim noted Mr. Abhsie's increased complaints of pain and the "rapid progress of the degeneration," but reached the same conclusion as to Mr. Abhsie's RFC as had Dr. Wabner (R. 96, 98-99).

---

[3]Radiofrequency neurotomy (also referred to as radiofrequency ablation) is a procedure to reduce back and neck pain. Heat generated by radio waves is used to target specific nerves and temporarily interfere with their ability to transmit pain signals. The radio waves are delivered to the targeted nerves via needles inserted through the skin above the spine. *Radiofrequency Neurotomy: Definition*, Mayo Clinic http://www.mayoclinic.org/tests-procedures/radiofrequency-neurotomy/basics/definition/prc-20013452 (last visited Mar. 9, 2015).

Mr. Abhsie continued to visit Dr. Jido. In November 2011, Dr. Jido opined that Mr. Abhsie was permanently disabled, specifically mentioning that Mr. Abhsie's pain worsened when he picked up his ten-year-old son (R. 363). Thereafter, in January 2012, Dr. Jido administered diskograms to multiple disks in Mr. Abhsie's back to attempt to determine the source of his pain. Mr. Abhsie reported a pain score of six out of ten for the L4-L5 disc, and a score of eight of ten for the L5-S1 disc (R. 652). In February 2012, Dr. Jido increased Mr. Abhsie's MS Contin dose and forwarded Mr. Abhsie's records to another doctor to discuss the possibility of spinal surgery (R. 651). Dr. Jido's reports from May 2012 state that even with pain medications, including Norco, Mobic, and increased doses of MS Contin, Mr. Abhsie reported only a 30 to 50 percent reduction in his pain levels, leaving him with complaints of pain at a level of six on a ten point scale (R. 665). Dr. Jido wrote that Mr. Abhsie was scheduled for spinal fusion surgery at the end of the summer of 2012 (R. 666). Mr. Abhsie had not undergone surgery at the time of the July 2012 hearing (R. 43), and surgery records were not submitted to the Appeals Council.[4]

On July 22, 2012, Dr. Kaza completed an RFC assessment, in which he recommended that, due to Mr. Abhsie's "severe lower back pain," Mr. Abhsie be limited to lifting less than ten pounds; standing or walking less than two hours in a six-hour workday; and alternate between sitting and standing intermittently every 30 minutes (R. 705, 708). Dr. Kaza also stated that Mr. Abhsie was limited in his ability to push, pull, reach and employ fine motor skills in his hands, and that he should avoid exposure to hazards and temperature extremes, which worsens his degenerative arthritis (R. 706-07).

---

[4] The record does not reflect whether Mr. Abhsie underwent the surgery. We expect this will be a matter that the ALJ will explore on remand.

At the July 30, 2012 hearing, Mr. Abhsie testified to constant back pain that radiated down his hips and right leg and increased throughout the day, rating his pain at a six on a ten point scale, which increased to a nine or ten at least once a day (R. 51-52). Mr. Abhsie testified that he no longer picks up his son, who is afflicted with cerebral palsy, for fear of increasing his pain (R. 59-60). Mr. Abhsie's wife also testified that Mr. Abhsie's pain was "excruciating" and "limited his ability to function" (R. 75).

The ALJ concluded that Mr. Abhsie's subjective complaints and allegations of pain were not consistent with or supported by the objective medical evidence (R. 28). The ALJ noted that "[m]ost physical examinations . . . were normal[,]" although radiological testing showed disc degeneration (R. 29-30). In addition, the ALJ cited to Dr. Jido's finding that medication provided Mr. Abhsie with a 30 to 50 percent reduction in pain as evidence that his treatment was working (R. 29). The ALJ also found Dr. Jido's November 2011 remark that Mr. Abhsie's pain increased when he picked up his ten-year-old son to be evidence that Mr. Abhsie undertook activity outside of his alleged limitations (R. 31). The ALJ highlighted a September 2011 note from Dr. Jido reminding Mr. Abhsie not to take excess pain medication as evidence of Mr. Abhsie's noncompliance with pain medication (R. 29-30). And, the ALJ noted that Mr. Abhsie was able to participate in the hearing -- which lasted for 65 minutes -- "without overt pain behavior" (R. 30).

The ALJ found that Dr. Kaza's and Dr. Jido's opinions were not consistent with the objective medical evidence (R. 30-31). The ALJ stated that she did not give Dr. Kaza's opinion controlling or great weight because "these extreme limitations [in Dr. Kaza's opinion] are not supported by the objective medical evidence, including the generally normal examination findings" (*Id.*). The ALJ also stated that she "considered" Dr. Jido's opinion, but found that it was "not supported by the medical evidence," and the ALJ noted that Dr. Jido's opinion that Mr.

Abhsie was totally disabled was an issue reserved for the Commissioner (R. 31). By contrast, the ALJ gave "great weight" to the non-examining DDS physician opinions, stating that they were "supported by the radiological testing" in the record (R. 30). Nevertheless, the ALJ gave Mr. Abhsie an "even more generous" RFC than did the DDS physicians (*Id.*).

At Steps 4 and 5, the ALJ found that while Mr. Abhsie was unable to perform any past relevant work, he was able to perform other work consistent with the RFC determined by the ALJ (R. 31-32).

## II.

"We review the ALJ's decision deferentially only to determine if it is supported by substantial evidence, which [has been] described as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Yurt v. Colvin*, 758 F.3d 850, 856 (7th Cir. 2014) (internal citations and quotations omitted). "Although [this court] will not reweigh the evidence or substitute our own judgment for that of the ALJ, [this court] will examine the ALJ's decision to determine whether it reflects a logical bridge from the evidence to the conclusions sufficient to allow [the] reviewing court[] to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014).

Mr. Abhsie contends that remand is warranted on several grounds. For the reasons described below, this Court agrees with Mr. Abhsie that the ALJ improperly ignored relevant medical evidence and rejected the opinions of Mr. Abhsie's treating physicians without a sound explanation, and we remand on these bases without reaching Mr. Abhsie's other challenges.

**A.**

Mr. Abhsie contends that the ALJ ignored medical evidence that did not support her determination that Mr. Abhsie's allegations and the opinions of his treating physicians were inconsistent with the objective medical evidence. "An ALJ need not mention every piece of medical evidence in her opinion, but she cannot ignore a line of evidence contrary to her conclusion." *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). Rather, "[t]he ALJ must confront the evidence that does not support her conclusion and explain why that evidence was rejected." *Moore*, 743 F.3d at 1123.

In this case, the ALJ stated that Mr. Abhsie's allegations and the opinions of Dr. Kaza and Dr. Jido were inconsistent with the objective medical evidence, which the ALJ characterized as reflecting largely "normal" physical examinations (R. 30). However, the results of Mr. Abhsie's MRIs, X-rays and medical examinations are not fairly or adequately characterized as "normal." They showed mild to moderate disc disease. In addition, as explained above, the medical record included not only Mr. Abhsie's consistent reports of severe and limiting back pain, but also diskograms that identified sources of Mr. Abhsie's pain and medical procedures (steroidal injections and radiofrequency neurotomy) to try to address that pain. "This mistaken reading of the evidence illustrates why ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves." *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) (collecting cases admonishing ALJs against "play[ing] doctor"). As the Seventh Circuit held in *Thomas*, 745 F.3d at 806, the ALJ's characterization of the claimant's examinations and X-rays as "normal" was error where the ALJ ignored contrary evidence in the record. *Id.* (holding that the ALJ erred by ignoring medical evidence that

supported the claimant's complaints of pain, including X-rays showing narrowed disc space and examinations showing limited range of motion).

Additionally, the ALJ's description of Mr. Abhsie's use of increased pain medication as "somewhat effective" misreads the record. The ALJ explained that the pain medication was "somewhat effective" because it contributed to a 30 to 50 percent reduction in Mr. Abhsie's pain (R. 29). However, in reaching this conclusion, the ALJ ignored the evidence that despite this reduction in Mr. Abhsie's pain, his pain still remained at a level of six on a scale of ten and that with other procedures ineffective in providing relief, a decision was made soon after that Mr. Abhsie would undergo back surgery. "There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce;" and "the ALJ [i]s not permitted to 'cherry-pick' from those mixed results to support a denial of benefits," where some evidence shows improvement with treatment, but other evidence shows continued symptoms and limitations from the claimant's impairment. *Scott v. Astrue*, 647 F.3d 734, 739-40 (7th Cir. 2011). The ALJ's failure to confront this evidence, which conflicted with her finding that Mr. Abhsie was not disabled, requires remand in this case.

### B.

In addition, the ALJ failed to satisfactorily explain her decision not to give controlling weight to the opinions of Dr. Kaza and Dr. Jido. The opinions of treating physicians must be given controlling weight if they are "supported by medical findings and consistent with substantial evidence in the record." *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013). While an ALJ may reject a treating physician's opinion, "she must provide a sound explanation for the rejection[.]" *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013). When deciding how much weight to give the treating physician's opinions, the ALJ must consider factors including

8

the length, nature and extent of the treating relationship, the physician's specialization, and the consistency and support for the opinion. 20 C.F.R. § 404.1527; *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). While the ALJ need not explicitly weigh each factor, she should make it clear that she considered them. *Schreiber*, 519 F. App'x at 959. The ALJ did not follow these prescribed procedures in this case.

### 1.

When considering the opinions of Dr. Kaza, the ALJ did not reference the required factors described in 20 C.F.R. § 404.1527 (R. 30-31). The ALJ did not mention the extent of Mr. Abhsie's relationship with Dr. Kaza, which has been ongoing since at least 2004 (R. 405). In addition, the ALJ failed to consider the consistency of and support for Dr. Kaza's opinion. In rejecting Dr. Kaza's opinion, the ALJ stated that the "extreme limitations [found by Dr. Kaza] are not supported by the objective medical evidence, including the generally normal examination findings" (R. 31). As explained above, however, the ALJ improperly characterized the medical record as a whole as "normal" without confronting the parts of the record that support Dr. Kaza's opinion that Mr. Abhsie was extremely functionally limited. Thus, the ALJ failed to provide a sound explanation for rejecting Dr. Kaza's opinion. *See Czarnecki v. Colvin*, -- Fed. App'x --, No. 14-1815, 2015 WL 55438, at *7 (7th Cir. Jan. 5, 2015) (holding that the ALJ failed to provide a sound explanation for rejecting the treating physician's opinion where the ALJ simply stated that the opinion was "inconsistent with the medical record" and that the record did not "contain any basis for such extreme restrictions," but the ALJ did not identify specific treatment notes contradicting the treating physician's assessment).

## 2.

The ALJ also failed to adequately explain her decision to not giving controlling weight to Dr. Jido's opinion. In fact, the ALJ did not state how much weight she actually gave Dr. Jido's opinion, but merely stated that she "considered" Dr. Jido's opinion (R. 31). This error, in itself, requires remand. *See Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) ("the ALJ must provide an account of what value the treating physician's opinion merits").

Moreover, the ALJ did not sufficiently consider the factors of 20 C.F.R. § 404.1527 when addressing Dr. Jido's opinion. Opinions from a specialist about medical issues in that area should be given more weight than opinions from a non-specialist source. 20 C.F.R. § 404.1527(c)(5). Here, while the ALJ noted that Dr. Jido is a pain management specialist, the ALJ did not state whether she gave that specialty any weight, or the basis for any decision the ALJ made not to do so (R. 31). In addition, while Dr. Jido apparently did not have the lengthy treating relationship with Mr. Abhsie that Dr. Kaza did, Dr. Jido treated Mr. Abhsie for at least ten months, from July 2011 to May 2012 (R. 360, 665). We see no evidence that the ALJ considered the extent of this treating relationship. Furthermore, as with Dr. Kaza's opinion, the ALJ did not adequately consider the consistency and support for Dr. Jido's opinion, as the ALJ ignored medical reports from Dr. Jido that indicated that Mr. Abhsie's pain and functional limitations were severe enough to merit surgery. Moreover, even Dr. Jido's opinion that Mr. Abhsie was disabled "must not be disregarded." *Hamilton v. Colvin*, 525 Fed. App'x 433, 439 (7th Cir. 2013) (citing SSR 96-5p). While the ultimate question of disability is reserved to the Commissioner -- and thus the ALJ is not bound by a physician's statement that a claimant is too disabled to work -- that physician's opinion is relevant to the claimant's ability to work full-time and cannot be ignored by the ALJ. *Garcia v. Colvin*, 741 F.3d 758, 760 (7th Cir. 2013). Therefore, the ALJ failed to

sufficiently consider the factors required by 20 C.F.R. § 404.1527 and thus failed to provide a sound explanation for not giving Dr. Jido's opinion controlling weight.

**3.**

Conversely, the ALJ failed to provide sufficient justification for adopting the opinions of the non-examining state agency physicians. The ALJ summarily stated that these opinions were "supported by the radiological testing" (R. 30). However, such a conclusory statement – with no indication about which parts of the testing supported the state agency opinions, and no explanation for the other portions of the record that were inconsistent with the non-examining physician's opinions – is an insufficient basis for rejecting the treating physician opinions and adopting the non-examining physician opinions. *See Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014) (holding that the ALJ's conclusory statement that the non-examining physician's opinion was consistent with the record when in fact it was not, was not enough to justify elevating that opinion over others). *See also Schmidt v. Colvin*, 545 F. App'x 552, 557 (7th Cir. 2013) (holding that the ALJ erred in giving great weight to the non-examining state agency physician's opinion where the ALJ's statement that the opinion was "well[-]reasoned and consistent with the body of evidence as a whole" did not show which portions of the record might actually be consistent with the non-examining physician's opinion).

In fact, there was considerable medical evidence that contrasted with the non-examining physicians' opinions. The government cites *Rice v. Barnhart*, 384 F.3d 363 (7th Cir. 2004), in support of the ALJ's reliance on the non-examining physicians. However, in *Rice*, the appeals court held that the record contained no other medical opinion that the claimant's limitations were greater than the RFC assigned by the ALJ. *Rice*, 384 F.3d at 370-71. Here, by contrast, Dr. Kaza's and Dr. Jido's opinions both support greater limitations than those that the ALJ found,

and, as described above, the ALJ has not provided sufficient justification for rejecting those opinions.

Additionally, the state agency physicians' assessments were more than six months old at the time of the hearing, and thus did not take into account more recent medical evidence, including many of Dr. Jido's treatment records and Mr. Abhsie's plans for back surgery. The ALJ erred by relying on such outdated opinions. *See, e.g., Hoyt v. Colvin*, 553 Fed. App'x 625, 627-28 (7th Cir. 2014) (holding that the ALJ erred by relying solely on the opinions of state-agency physicians who never examined the claimant and whose "dated opinions could not account for how [the claimant's] condition might have deteriorated"). Therefore, the ALJ did not adequately explain why the non-examining physicians' opinions merited greater weight than those of the treating physicians.

## CONCLUSION

For the reasons stated above, we grant Mr. Abhsie's motion to remand (doc. # 12) and deny the Commissioner's motion to affirm (doc. # 21). The case is remanded for further proceedings consistent with this opinion. The case is terminated.

**ENTER:**

SIDNEY I. SCHENKIER
United States Magistrate Judge

**DATE: March 17, 2015**